

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JAMARI CARTER, | § | No. 08-19-00018-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 371st Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | § | Of Tarrant County, Texas |
| | § | |
| Appellee. | § | (TC# 1508284D) |
| | § | |

## MEMORANDUM OPINION[1]

Advancing four issues, Jamari Carter appeals a trial court's order revoking his deferred adjudication community supervision. We affirm in part and reform the judgment of conviction in part.

### BACKGROUND

On August 29, 2018, Appellant pleaded guilty to one count of aggravated sexual assault of a child under fourteen. In accordance with Appellant's plea bargain with the State, the trial court deferred a finding of guilt and placed him on community supervision for eight years. The trial court imposed several conditions on the community supervision, including that Appellant

---

[1] See TEX.R.APP.P. 47.4.

1

"[c]omply with sex offender registration procedures as required by the laws of this State and of any other State and pay any costs thereof as required by law."

On October 11, 2018, the State filed a petition to adjudicate Appellant guilty of the original offense, alleging that he had violated the sex offender registration requirement. Appellant pleaded not true to the petition's allegations. Following an evidentiary hearing, the trial court revoked Appellant's probation, and adjudicated him guilty of the underlying offense. The trial court assessed his punishment at five years' confinement.

As we explain below, he contends that the evidence is legally insufficient to prove that he intentionally failed to register as a sex offender. He also points out an error in the judgment that requires correction. We begin with our standard of review.

### STANDARD OF REVIEW

"The question at a revocation hearing is whether the appellant broke the contract he made with the court after the determination of his guilt." *Kelly v. State*, 483 S.W.2d 467, 469 (Tex.Crim.App. 1972). While defendants are not entitled to probation as a matter of right, once a defendant is placed on probation in lieu of other punishment, this conditional liberty "should not be arbitrarily withdrawn by the court ...." *DeGay v. State*, 741 S.W.2d 445, 449 (Tex.Crim.App. 1987).

We review orders revoking community supervision under the abuse of discretion standard. *Leonard v. State*, 385 S.W.3d 570, 576 (Tex.Crim.App. 2012). A trial court has the discretion to revoke a criminal defendant's community supervision when a preponderance of the evidence supports the State's allegation that the defendant violated a condition of probation. *Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex.Crim.App. 2006), *quoting Scamardo v. State*, 517 S.W.2d 293, 298 (Tex.Crim.App. 1974); *Lawrence v. State*, 420 S.W.3d 329, 331 (Tex.App.--Fort Worth 2014, pet.

2

ref'd). Here, a "preponderance of the evidence" means the "greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Rickels*, 202 S.W.3d at 764. The trial court is the sole judge of witness credibility and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex.Crim.App. 2013). Nonetheless, if the State fails to meet its burden of proof, the trial court abuses its discretion by revoking the community supervision. *Cardona v. State*, 665 S.W.2d 492, 493-94 (Tex.Crim.App. 1984) (en banc).

### THE STATE'S EVIDENCE

The State presented two witnesses at the hearing below. Jennifer Aguilar serves as a Tarrant County probation officer.[2] She met with Appellant on August 31, 2018, to explain the terms of his community supervision. She did so by reading out loud his specific probation terms as described on two department forms, and then having him initial next to the specific terms to acknowledge his understanding of them. One term that Appellant acknowledged states: "No later than the 7th day after 08/31/2018 (date of release/placement on community supervision or juvenile probation), I must personally appear at the following local law enforcement authority to verify and complete my registration." Because Appellant intended to relocate to Forest Hill following his release, the form then stated that he was to register at the Forest Hill Police Station, and also provided the station's address. This same condition was actually read to and acknowledged by Appellant twice, as it appears on two department forms. Officer Aguilar described Appellant's

---

[2] This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001. We follow the precedents of the Fort Worth Court to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

3

demeanor at that time as "very defensive" and he was "resistant to being put on probation, resistant to the conditions, [and] resistant to being there."

The State's other witness, Corporal Zachary Hodgson, handles sex offender registration at the Forest Hill Police Department. Either a probation department or an institution will notify him when a sex offender intends to move to Forest Hill. Corporal Hodgson was specifically notified that Appellant was moving into Forest Hill, so he set up the appropriate paperwork and awaited Appellant to come in and complete the registration. Corporal Hodgson understood that Appellant's seven-day window started on August 31, 2018. By September 26th, however, he had still not heard anything from Appellant.[3] So Corporal Hodgson went to the address listed on the probation department's form--a hotel--and was informed that Appellant had last lived there nine months earlier. The desk clerk, however, had seen Appellant around, but not for several weeks. Corporal Hodgson then contacted Officer Grant, Appellant's probation officer, and when she did not have a good address for Appellant, Corporal Hodgson issued an arrest warrant.

Appellant also testified at the revocation hearing. He claimed that he called to set up an appointment with the Forest Hill Police Department, but the person who was responsible for registrations was not there at the time and would not return until past the seven-day deadline. Nonetheless, Appellant claims he left a message with his name and date of birth. And before the deadline, he moved back to Fort Worth. He also claimed that he informed his probation officer about this move and provided her a specific Fort Worth address. She informed him that she was going to visit him at the Fort Worth address, but she never showed up. He reported to her about two weeks later, but by that time, the arrest warrant had already issued. The probation officer later

---

[3] Corporal Hodgson allows a grace period of two to three weeks at most and stated that if Appellant had come in by the 12th day, he would have processed the paperwork as if it were timely.

4

told Appellant that she had gone to the address that he had given her, but he had already moved elsewhere. During this period, Appellant did make three visits to the "PSY" office for a sex-offender evaluation.

As to several of these issues, however, the record reflects disputes in the testimony. Corporal Hodgson agreed that he works a variable shift--on one week he works every day except Wednesdays and Thursdays, followed the next week by a Wednesday-Thursday-only shift. He testified, however, that he was never off more than three days, and he never received any kind of message from Appellant. Additionally, Appellant acknowledged that in early September he told his probation officer that he knew he needed to register but he did not have a ride. He also called her on September 18th and gave her a Fort Worth address and she went to see him on the 21st, but he had already moved to Arlington by that time. He did not tell his probation officer about the Arlington move because he was "scared" and "embarrassed."

## SUFFICIENCY CHALLENGES

A person commits the offense of failure to comply with sex offender registration requirements "if the person is required to register and fails to comply with any requirement of this chapter." TEX.CODE CRIM.PROC.ANN. art. 62.102(a). Because Article 62.102(a) does not itself contain a culpable mental state and does not clearly dispense with one, the Texas Court of Criminal Appeals concluded that the State must prove knowledge or recklessness to establish criminal responsibility under that Article. *Robinson v. State*, 466 S.W.3d 166, 170 (Tex.Crim.App. 2015), *citing* TEX.PENAL CODE ANN. § 6.02(b) ("If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element."). However, the *Robinson* court determined that the offense of failure to register as a sex offender is a "circumstances of conduct" type of offense. *Robinson*,

5

466 S.W.3d at 170-71. As such, "[t]he 'circumstance' at issue is the duty to register and the culpable mental state of 'knowledge and recklessness' applies only to the duty-to-register element, rather than the failure-to-comply element." *Febus v. State*, 542 S.W.3d 568, 573 (Tex.Crim.App. 2018). Accordingly, the State is not required to prove an additional culpable mental state regarding a defendant's failure to register beyond establishing his awareness of the registration requirements. *Id.*

Article 62.051 addresses the situation where a person intends to move from one address to another, but never actually completes the move. In that situation:

> (h) If a person subject to registration under this chapter does not move to an intended residence by the end of the seventh day after the date on which the person is released or the date on which the person leaves a previous residence, the person shall:
>
> (1) report to the juvenile probation officer, community supervision and corrections department officer, or parole officer supervising the person by not later than the seventh day after the date on which the person is released or the date on which the person leaves a previous residence, as applicable, and provide the officer with the address of the person's temporary residence; and
>
> (2) continue to report to the person's supervising officer not less than weekly during any period of time in which the person has not moved to an intended residence and provide the officer with the address of the person's temporary residence.

TEX.CODE CRIM.PROC.ANN. art. 62.051(h).

Appellant contends: (1) that the State failed to show that Appellant was aware of the specific provisions of Article 62.051(h) governing an intended but un-executed move (Issue One), (2) that the State did not disprove that Article 62.051(h) was complied with (Issue Two), and (3) that the State carried the burden to show Appellant knowingly failed to comply with his duty to register (Issue Three). We take each claim in turn.

**A. The State met its burden for the duty-to-register element.**

6

Appellant first contends that the State failed to show that he was specifically aware of Article 62.051(h)'s provision dealing with an intended, but un-executed move from one place to another. He bases his claim on the *Robinson* decision that imposes the culpable mental state of "knowledge" and "recklessness" on the duty-to-register element. *Robinson*, 466 S.W.3d at 173 (requiring State to prove defendant "knew or was reckless about whether he had a duty to register as a sex offender"). We decline Appellant's invitation to read *Robinson* that broadly or construe the evidence in this case that narrowly. First, the defendant in *Robinson* acknowledged that he was aware of his duty to register. *Id.* Thus, the issue of that person's knowledge about every specific provision of Article 62.051 was not at issue. Moreover, Appellant was specifically informed of his obligation to comply with Texas registration law generally, and the provisions of Article 62.051 specifically. He concedes at the hearing that he understood the registration requirement. Any failure to familiarize himself with the specific sub-sections of the law is at best evidence of recklessness. Finally, he actually acknowledged on department forms a warning that summarized the Article 62.051(h) provision:

> **Change of Address:** No later than the 7th day before I move to a new residence in this state or another state, I must report in person to the law enforcement authority designated as my primary registration authority . . . and inform that authority and officer of my intended move. … If I do not move to an intended address by the end of the 7th day after my anticipated move date, I shall report to my primary registration authority and any supervising officer weekly, and provide an explanation regarding changes in my anticipated move date and intended address.

We overrule Appellant's first issue.

**B. The State met any burden to disprove the application of Article 62.051(h).**

In his second issue, Appellant claims that the State failed to disprove the application of Article 62.051(h). We disagree. That sub-section required that if Appellant decided not to move to his intended address, that he report to his parole officer "by not later than the seventh day after

7

the date" on which he was released or the date on which he "leaves a previous residence, as applicable[.]" TEX.CODE CRIM.PROC.ANN. art. 62.051(h)(1)(2). Here, Appellant was required to register in Forest Hill by September 7, 2018, but testified that he left Forest Hill before that date to go to Tarrant County. That meant that he would have had to report to his probation officer sometime between September 1st and September 14th. On cross examination, Appellant admitted to making a call to his probation officer on September 18th to report his new address. Yet, he then apparently abandoned that address before his probation officer went to see him there on September 21st. He did not tell her about his next Arlington address because he was "scared" and "embarrassed." Taking the evidence in the light most favorable to the trial court's ruling, as we must, the trial court could have concluded that the State, by a preponderance of the evidence, showed that Appellant did not comply with subsection (h). We overrule Issue Two.

### C. The traditional legal insufficiency test is not applicable.

In his third issue, Appellant argues that the State was also required to show that he knowingly and intentionally failed to register. He argues that he "completed the necessary forms with the probation office" but did not register within the seven-day window because "his housing situation changed" and he was "unable to see the person with Forest Hill Police Department[.]" Appellant essentially argues that we adopt the rationale of a concurring opinion in *Robinson* that would have applied the requisite mental state to both a person's knowledge of the requirement to register, and the actual act of failing to register. *Robinson*, 466 S.W.3d at 175 (Alcala, J., concurring). And he further claims that we must view the evidence as we would under a traditional legal sufficiency challenge to a conviction. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (holding evidence is legally sufficient when, viewed in the light most favorable to the verdict, *any* rational jury could have found the essential elements of the offense beyond a reasonable doubt);

8

*Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010) (establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence in sufficiency challenge to conviction).

We reject Appellant's argument for two reasons. First, this case does not come to us as a conviction under Article 62.102 for a failure to register. Had that been the case, Appellant could have been sentenced under that statute for the criminalized conduct. Rather, this case comes to us as a challenge to an order revoking community supervision which is reviewed under the abuse of discretion standard. *Leonard*, 385 S.W.3d at 576. Appellant cites no authority that the *Jackson v. Virginia* standard applies in this context. Second, even if it did, we would decline to apply the intent element challenged by Appellant to the act of reporting itself.

In *Robinson*, the defendant claimed that he attempted to register but the police officer kept putting him off and would not fill out the paperwork. *Robinson*, 466 S.W.3d at 169. Answering a concurrence's claim that an intent element should apply to the actual failure to register, Presiding Judge Keller wrote that "[t]he solution is not to impose a culpable mental state where it does not belong, but to recognize, in an appropriate case, that the voluntary-omission requirement and due process are the mechanisms to address any stonewalling by public officials that prevents a sex-offender from complying with registration requirements." *Id.* at 175 (Keller, P.J. concurring). Neither the voluntary omission defense, nor a due process challenge are raised here. We are compelled to follow the majority rationale in *Robinson*, and the standard of review applicable to probation revocation cases. *See Febus*, 542 S.W.3d at 573 (declining to overrule *Robinson* and impose a culpable mental state to the actual failure to register).

We therefore decline Appellant's invitation to apply a *mens rea* requirement to the failure to register, or to apply the *Jackson v. Virginia* legal sufficiency standard of review to the trial court's decision below. Issue Three is overruled.

**CONFORMING THE JUDGMENT TO THE EVIDENCE**

Appellant pleaded "not true" to the petition to adjudicate. The judgment, however, states otherwise, reflecting a plea of true. We have the authority to reform the judgment to correct that error and do so here. *See French v. State*, 830 S.W.2d 607, 609 (Tex.Crim.App. 1992) (en banc) (holding that an appellate court has the authority to modify a judgment to make it speak the truth); *Bennett v. State*, 471 S.W.3d 5, 15 (Tex.App.--El Paso 2015, pet. ref'd) (same). The judgment also reflects that the "Terms of Plea Bargain" were "True But Hearing." We are not sure what that means, and reform it to state "Not Applicable."

**CONCLUSION**

We overrule Appellant's first, second, and third issues, and affirm the judgment of conviction below, other than we modify the judgment of conviction to recite that Appellant pleaded not true to the petition to adjudicate, and that there was no plea bargain at issue in the final conviction.

JEFF ALLEY, Chief Justice

December 11, 2019

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

10