The State introduced testimony from Lindsay Ulloa, the apartment manager at the La Hacienda Apartment complex. She explained that her office was located in the "6100 Glenmont" building, and she had never seen Appellant around the complex. She further explained that La Hacienda Apartments was a small complex where everyone knew everyone. She described Ayala as a man that everyone in the apartment complex knew because he picked up cans to live, even collecting cans from the various residents.
According to Ulloa, Ayala would have let her know if someone were living with him "just in case." As she stated, "he's pretty good letting me know, because like, his condition, so." Yet, Ayala had never mentioned to her that someone was sharing his apartment with him. She did agree that she would not have seen someone come and go from Ayala's apartment outside the hours of 9:00 in the morning and 6:00 in the afternoon. According to Ayala, Appellant was only in the apartment outside of those hours.
The trial court charged the jury that it was required to find not only that Appellant knew his duty to register as a sex offender, but also that he had intentionally or knowingly failed to comply with that duty. Appellant argued that he had actually complied with his duty to register a change of address and that he was living with Javier Ayala in his apartment at "6100 Glenmont." The failure to register was a clerical error on the part of law enforcement and not the result of Appellant intentionally supplying incorrect information. The State argued that Appellant did not live with Ayala at "6100 Glenmont,"
*572 but allowed that if the jury believed that he did, Appellant had still failed to register because he provided the wrong address to law enforcement.
The jury found Appellant guilty. At punishment, Appellant pleaded true to two enhancement allegations that he had previously been convicted in Los Angeles of both robbery and possession of a firearm as a felon. The State also introduced evidence that Appellant had changed his name multiple times in his life as he moved from New York to Los Angeles to Houston. The jury found both enhancement allegations to be true and sentenced Appellant to thirty-five years in prison.
On appeal, Appellant argued that the evidence was legally insufficient to support a determination that Appellant had intentionally or knowingly failed to provide his new address to the Houston Police Department. Specifically, Appellant argued that the failure was due to a negligent mistake on either the part of the registering authority or Appellant himself. The court of appeals rejected this argument, simply holding that under this Court's opinion in Robinson v. State , the State was not required to prove that Appellant had a culpable mental state when failing to provide the correct address.[4] The court of appeals affirmed the conviction, holding that the evidence was legally sufficient to support the jury's verdict. We granted review to determine the propriety of that holding. We will affirm.
Analysis
When addressing a challenge to the sufficiency of the evidence, we determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5] We may not re-weigh the evidence or substitute our judgment for that of the factfinder.[6] A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony.[7] We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution.[8] This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony.[9]
The essential elements of an offense are determined by state law.[10] Under Texas state law, we measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case.[11] Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the *573 State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[12]
We recently analyzed the elements of the offense of failure to comply with the requirements of registering as a sex offender under Chapter 62 of the Code of Criminal Procedure.[13] In Robinson , we held that this offense is a "circumstances of the conduct" type of offense.[14] The "circumstance" at issue is the duty to register and the culpable mental state of "knowledge and recklessness" applies only to the duty-to-register element, rather than the failure-to-comply element.[15]
Robinson claimed that he had intended to register a change of address, but he was rebuffed in his attempts by the police.[16] Based upon our determination that the statute did not require a showing of an intentional failure to register, we rejected Robinson's argument that the evidence was insufficient to establish that he intentionally failed to report his prospective change of address in person.[17] We affirmed the court of appeals and upheld the conviction noting that the evidence convincingly established that Robinson had failed to report an intended change of address in person.[18]
In this case, Appellant argued to the court of appeals that he did not intend "to evade his duties to properly register as a sex offender." But he further argued that "any discrepancies in [A]ppellant's last listed address and/or apartment number were merely a negligent mistake on the behalf of the registering authority and/or [A]ppellant." The State responded that Appellant's argument had been rendered moot by this Court's decision in Robinson . The court of appeals agreed and held that there was no need to analyze the proof surrounding Appellant's mental state when he failed to comply with his duty to register as a sex offender.[19] We agree with the court of appeals' analysis that the evidence was sufficient to establish Appellant's awareness of the registration requirements and that the State was not required to prove an additional culpable mental state regarding his failure to register.
However, the court of appeals did not fully address Appellant's argument that the jury had irrationally determined that Appellant failed to comply with his duties to register as a sex offender. As Presiding Judge Keller observed in her concurring opinion in Robinson , when authorities rebuff attempts to register, the sex offender may not be criminally liable on the basis that his failure to register was involuntary.[20] Though this rationale was not explicitly incorporated into the majority opinion in Robinson , we find the reasoning persuasive and incorporate it into the holding in this case. Appellant testified at trial, and argues on appeal, that he not *574 only intended to register his change of address, but that the evidence established that he did so. According to Appellant, if there was any failure to comply, it was on the part of the registering agency, not him. In short, Appellant argues that his failure to comply was involuntary.
Section 6.01(a) of the Penal Code provides that "a person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession."[21] The issue of voluntariness of one's conduct is separate from the issue of one's mental state.[22] "Voluntariness," within the meaning of Section 6.01(a), refers only to one's own physical body movement.[23] If those physical movements are the non-volitional result of someone else's act, that movement is not voluntary.[24]
Typically, the question of whether a defendant has committed a voluntary act arises in situations in which evidence shows a defendant engaged in conduct, but the defendant denies that the physical conduct was voluntary. For example, in Farmer v. State , the defendant argued that his wife's mistake in setting out the wrong medication before he drove to work rendered his conduct involuntary.[25] Similarly, in Rogers v. State , the defendant in a murder case argued that his conduct in shooting his wife was involuntary because the gun simply "went off" when she grabbed his arm.[26]
But in this case, the question is more straightforward as the dispute is not over whether or not Appellant involuntarily gave a bad address to the police. Rather, the dispute is over whether Appellant ever gave that address in the first place. Appellant claims he is not guilty because someone else committed the conduct he is accused of, namely entering the wrong address into the sex offender database. Consequently, we must look to the record in a light most favorable to the jury's verdict to determine if any rational factfinder could find that Appellant had told the registering authorities that he was moving to "6110 Glenmont, Apt. # 45."
As described above, the registering officer testified that Appellant told her, face-to-face, that he was moving to "6110 Glenmont." She explained that Appellant presented her with a temporary driver's license signed by Appellant that listed Appellant's address as "6110 Glenmont." She prepared the requisite forms based upon the information Appellant provided, and Appellant signed three different documents that listed his address as "6110 Glenmont." And Appellant was familiar with the process, having successfully filled out the proper paperwork for six years prior to this offense. From this testimony and these exhibits, a rational jury could have found that Appellant did tell the police that he was changing his address to "6110 Glenmont." Based upon the uncontradicted testimony of the tenant in the *575 listed apartment at 6110 Glenmont that same rational jury could have found that Appellant had lied to the police about moving to an apartment at "6110 Glenmont."
But, what about the evidence showing that Appellant had actually been living at "6100 Glenmont, Apt. # 45" the entire time? The jury was not required to credit this evidence and could have rationally resolved the testimonial conflict against Appellant. Though Mr. Ayala said that Appellant had been living with him, the apartment manager, Ms. Ulloa, testified that she had never seen Appellant around the complex before, and that Ayala had never mentioned to her that someone was living with him. She also explained that it would have been uncharacteristic of Mr. Ayala not to tell her about his new roommate. The jury chose to believe Ms. Ulloa rather than Mr. Ayala. It was free to do so, and we must defer to that credibility determination.
Similarly, the jury could also have disregarded Appellant's claims that he received a plastic driver's license from DPS at the "6100 Glenmont" address. Appellant introduced a photocopy of this license, but the original was lost two days prior to trial. While Appellant denied fabricating the copy of the plastic license, a jury could have disbelieved him given the temporary license with the "6110 Glenmont" address that Appellant himself admitted he had received from DPS. During the State's cross-examination of Appellant the following exchange took place:
Q: DPS gave you a paper license, right?
A: Yes, with a picture.
Q: And that license is on State's Exhibit 3, right?
A: Yes, sir.
Q: And you presented that paper license when you went to HPD to register for your new address, right?
A: Yes. That's the one I got at DPS.
Q: The question I'm asking, did you present the license in State's Exhibit 3 to the officer when you registered?
A: Yes, sir.
Simply put, a rational jury could have concluded that Appellant had moved out of La Hacienda Apartments in March 2013 but told the police he was still living there. In other words, that same jury could have concluded that Appellant never moved to any apartment at either "6110 Glenmont" or "6100 Glenmont," and that Appellant had only claimed to live at "6100 Glenmont" after he had been caught giving bad information to the police. Though Appellant argues that it was more reasonable for the jury to conclude that the police had made a clerical mistake, we must defer to the jury's resolution regarding competing inferences and evidentiary conflicts.[27]
Stare Decisis
It has also been suggested that this Court reconsider its holding in Robinson v. State . We do not frivolously overrule established precedent.[28] Rather, we follow the doctrine of stare decisis to promote judicial efficiency and consistency, encourage reliance upon judicial decisions, and contribute to the integrity of the judicial process.[29] The interests underlying the doctrine of stare decisis are at their height for judicial interpretations of legislative *576 enactments upon which parties rely for guidance in attempting to conform to those legislative enactments.[30] If a prior decision was poorly reasoned or unworkable, we do not achieve the goals sought through reliance upon stare decisis by continuing to follow that precedent.[31] As this case demonstrates, Robinson is neither poorly reasoned nor unworkable.
The argument was made in Robinson that there should be a second culpable mental state that attaches to the act of failing to register, and that same argument is made again here. The Court rejected this argument when it decided Robinson , and nothing has changed since that decision. But the facts of this case show that requiring that the failure to register be intentional is unlikely to change the ultimate sufficiency decision. The same facts that a jury can rely upon to determine whether a defendant knows he has a duty to register as a sex offender will often give rise to a rational inference that his failure to register was intentional.
Here, the State marshaled evidence that Appellant had gone over his registration requirements multiple times. The State introduced documents signed by Appellant indicating his understanding of his duty to register. The jury heard that Appellant had previously successfully registered as a sex offender on several occasions. From this, the State argued that Appellant's failure to register was intentional because Appellant was aware of the requirements and had demonstrated his ability to successfully register. It had to. The case was tried before this Court decided Robinson and the jury was instructed to determine whether Appellant had intentionally failed to register.[32] The jury could have rationally inferred that Appellant's failure to register was intentional (and rejected Appellant's theory that it was the result of a mistake) even if we had interpreted the statute to require a second culpable mental state.
As a practical matter, our decision in Robinson has not affected the sufficiency determination in this case at all. At most, Robinson resolves defensive claims that the failure to register was due to either an "accident" or "mistake" by analyzing them under the rubric of "involuntary act."[33] Thus, we see no compelling reason to abandon our holding in Robinson .
Conclusion
The court of appeals properly concluded that the evidence in this case was legally sufficient. We agree with the court of appeals that the evidence was sufficient to establish that Appellant was aware of his duty to register and the requirements attendant to that duty. We further hold that a rational jury could have concluded that Appellant had provided incorrect information regarding his new address. We affirm Appellant's conviction for failing to comply with his duty to register a prospective change of address.
Richardson, J., filed a dissenting opinion in which Alcala and Walker, JJ., joined.
Richardson, J., filed a dissenting opinion in which Alcala and Walker, JJ. joined.
*577 DISSENTING OPINION
Appellant, Albert Febus, was convicted and sentenced to 35 years for failing to register as a sex offender under Texas Code of Criminal Procedure Articles 62.055(a) and 62.102(a).[1] He appealed, challenging the sufficiency of the evidence to support the conviction. On direct appeal, the First Court of Appeals, obliged to follow this Court's decision in Robinson v. State ,[2] affirmed Febus's conviction. Today, the majority continues to uphold Robinson , finding that the State was not required to prove an additional culpable mental state related to Febus's failure to register. I did not join the majority opinion in Robinson ,[3] and for the same reasons, respectfully, I dissent in this case.
A. Background
Febus complied with his sex offender registration requirement for six years without any issues. In 2013, Febus was living at La Hacienda Apartments in Houston. La Hacienda is comprised of two buildings-one at 6110 Glenmont and one at 6100 Glenmont. In March of 2013, Febus moved within La Hacienda-from the apartment where he was residing at 6110 Glenmont Drive, Apt. 57, to an apartment in the other building at 6100 Glenmont Drive, Apt. 45. Febus clearly knew that he was required to update his address to comply with the sex-offender registration requirement. Febus signed his registration documents when he moved; however, those documents listed his new address as 6110 Glenmont Drive, Apt. 45, instead of the correct address of 6100 Glenmont Drive, Apt. 45-he got the change of apartment units correct, but missed one digit on the street number. Seven months later, a compliance officer visited 6110 Glenmont Drive, Apt. 45, to ensure that Febus was living where he was registered. The officer spoke with the property manager and the resident of the apartment identified on Febus's registration. Febus was not listed on the leases for either apartment.[4] The property manager testified that she did not know Febus and had not seen him on the apartment grounds. After determining that Febus was not living at 6110 Glenmont Drive, Apt. 45, the officer obtained a warrant for his arrest. The officer did not go to Apt. 45 in the other building located at 6100 Glenmont Drive nor ask whether there was an Apt. 45 in the second building.
Febus was charged with intentionally and knowingly failing to provide his new address to the local law enforcement authority.[5] At Febus's trial, the registration *578 officer, Becky Wilson, testified that Febus told her his address was 6110 Glenmont Drive, Apt. 45. She also testified that the temporary driver's license from DPS, that was given to her by Febus, reflected that Febus's address was 6110 Glenmont, Apt. 45, and she used this information to fill in his "CR-39" registration form.
Febus testified at his trial with the aid of an interpreter. He stated that, although he is able to speak and understand English, he preferred to testify in his native language of Spanish.[6] Febus testified that he went to the registration office some time in February and told Officer Wilson that he was going to be moving to 6100 Glenmont, Apt. 45. He said that Officer Wilson told him he needed to first have his address changed with the Department of Public Safety, then return to the registration office to get a "blue card," which must be carried by registrants at all times. Febus said that he went to the DPS and obtained his temporary license, but when he returned to the registration office, Officer Wilson advised him to stay at his old address until his registration was up for renewal in March. Febus testified that he stayed at 6110 Glenmont, Apt. 57, until he went back to the registration office in early March. Febus said that when he returned to the registration office, he gave Officer Wilson the paper he had received from the DPS office. Febus was adamant that he gave DPS the correct address of 6100 Glenmont, Apt. 45, but he admitted that the temporary paper license he received from DPS reflected the incorrect street number.
Although Febus insisted that he told Officer Wilson that he was moving to 6100 Glenmont, not 6110 Glenmont, Officer Wilson testified at trial that Febus provided her with the incorrect address which resulted in her typing it incorrectly on the forms. She said that Febus signed the registration forms without correcting the address. This resulted in the CR-39 form and the "blue card" correctly reflecting Apt. 45, but incorrectly reflecting street number of 6110 instead of 6100.
However, inexplicably, when Febus received his permanent identification card in the mail from DPS, it had the correct address on it-6100 Glenmont, Apt. 45. A photocopy of his permanent ID with his correct address was introduced into evidence. Therefore, logic would dictate that Febus must have given DPS the correct address because he was issued a permanent ID card with the correct address. It is not clear from the record how DPS could have given Febus a temporary paper license with the wrong address, but have mailed him a permanent ID with the right address. Surprisingly, Febus's attorney did not pursue that line of questioning. The jury found Febus guilty of failure to register and assessed punishment at 35 years.[7]
B. The Failure To Register
Two distinct statutes come together to form the failure-to-register offense under which Febus was charged. Article 62.055 *579 places a duty on sex offenders to provide registration authorities with change-of-address information.[8] Article 62.102 makes failing to comply with the duty to register a criminal offense.[9] Essentially, "[a] person commits an offense if the person is required to register and fails" to do so.[10] No culpable mental state is expressly prescribed in the statute for failing to register, but neither does the statute plainly dispense with a mental element. Under Texas Penal Code § 6.02(b), "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." Texas Penal Code § 6.02(c) provides that, "If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility."
C. Robinson- No Culpable Mental State Required For Failing To Register
Nevertheless, this Court held in Robinson that a culpable mental state applies to the duty to register (which arises under Article 62.055 ), but not to the failure to register (which is made a criminal offense under Article 62.102 ).[11] I disagree with that particular part of the holding in Robinson . As Judge Alcala suggested in her concurring opinion in Robinson , the penalties can be severe for "sex offenders who lack any criminal intent as to their conduct in failing to register" because we have "effectively [made] the failure-to-register offense a strict-liability crime."[12] If a person who is required to register fails to successfully do so, even if there was no intent to not register, no knowledge that there was a failure to correctly register, and no reckless disregard for whether registration was accomplished, Robinson dictates that the conviction must nevertheless be upheld. I do not agree with that, and I continue to take the position that Robinson should be overruled.
In this case, the record indicates that Febus did not intentionally fail to register. It might be a close call as to whether the evidence shows that Febus had the culpable mental state of knowledge (i.e., he knew that he had registered an incorrect address), or recklessness (he consciously disregarded the risk that his registration papers reflected an incorrect address). But, as the law stands under Robinson , the State has no duty to prove any culpable mental state, which means that there is zero margin of error.
I believe the facts of this case could be interpreted as illustrating how a sex-offender registration mistake could have been made through inadvertence or negligence, given the complicated nature of the registration requirements, but not intentionally, knowingly, or recklessly.[13] Even if this is not that case, I can anticipate a set of facts where the failure to successfully *580 register could occur through no fault of the person required to register (unintentionally, unknowingly, and not recklessly); yet, that person would still be held in violation of the statute. That is why a culpable mental state should be tied to the failure to register, not just to the duty to register.[14]
The majority holds that a rational jury could have concluded that Febus had provided incorrect information regarding his new address-in other words, Febus's failure to register was not done involuntarily . That is true. But I believe the sufficiency analysis needs to be taken one step further to determine whether a rational jury could have concluded that Febus intentionally, knowingly, or recklessly provided incorrect information regarding his new address. This would require overturning Robinson and holding that a culpable mental state applies to not only the duty to register, but also to the failure to register.
D. The Cases The Court Relied Upon In Robinson Are Distinguishable
The majority opinion in Robinson followed the Court's rationale in McQueen v. State[15] and Huffman v. State .[16] Both cases held that a culpable mental state must attach to the circumstances of the conduct. McQueen involved the unauthorized-use-of-a vehicle statute, under which a person commits an offense if he "intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner."[17] In McQueen , this Court held that the culpable mental state applied only to the actor's knowledge of whether he or she had the consent of the owner-the circumstances surrounding the conduct. Similarly, Huffman involved the failure-to-stop-and-render-aid statute, where the accident-the circumstances surrounding the conduct-triggers a person's duty under that statute, and the Court held that the culpable mental state applied to whether the person had knowledge that they had been involved in an accident. While I agree that McQueen and Huffman support a conclusion that a culpable mental state must be applied to the circumstances surrounding the conduct, which, in this case, would be the duty to register, I do not agree that those two cases support the conclusion that a culpable mental state must be applied only to the duty to register. The difference lies in what facts are required to prove that an offense has been committed.
In McQueen , it was logical for the Court to apply the culpable mental state to the actor's knowledge of whether he had consent of the owner-the circumstance surrounding the conduct-because it is difficult to envision a situation where one could operate a vehicle unintentionally or unknowingly. Similarly, it was logical for the Court in Huffman to ascribe the culpable mental state of knowledge to the circumstances surrounding the conduct-an accident and a victim suffering injury. Again, it is difficult to envision a situation where, knowing an accident had occurred and a person is potentially injured, a person could inadvertently, unknowingly, or unintentionally *581 fail to stop, remain, or return. In other words, once the culpable mental state is attributed to the circumstances,-that one knows that the owner has not consented ( McQueen ), or knows that an accident has occurred ( Huffman )-the operation of the vehicle or the failure to stop, remain, or return, is in violation of the statute. Whereas, in a failure-to-register scenario, even if one knows that he has a duty to register, it is quite possible that the failure to successfully comply with registration requirements is neither intentional nor knowing. A person may fail to register because of another person's mistake, and the failure to discover the mistake may occur inadvertently rather than intentionally or knowingly.
The Robinson majority also relied on this Court's opinion in Young v. State[18] to support its conclusion that the culpable mental states of knowledge and recklessness apply to only the duty-to-register element of the failure-to-register offense. This Court held in Young that, "[b]ecause Article 62.055 punishes what would otherwise be innocent behavior-moving to a new address-under the circumstances that the person is a registered sex offender, we conclude that the statute creates a 'circumstances surrounding the conduct' offense."[19] While I agree that it is the circumstance of having a duty to register that is one essential element of the offense of failure to register requiring a culpable mental state, I do not agree that Article 62.055 punishes the innocent behavior of "moving to a new address." Rather, it is Article 62.055's failing to notify law enforcement when moving to a new address that is punished as an offense under Article 62.102. That second element should also require a culpable mental state. In fact, this Court held in Young that the gravamen of the offense created by Article 62.055(a) is the "forbidden act" of "failing to inform law enforcement about an impending or completed change of residence."[20] It is true that, in Young , this Court drew "obvious parallels" between Article 62.055 and the failure-to-stop-and-render-aid statute in Huffman . However, such parallels were in the context of our analysis regarding unanimity and the manner and means of violating the statute, not in ascribing a culpable mental state.
E. Conclusion
Therefore, I believe that the majority in Robinson incorrectly limited its assessment of the culpable mental state required by the offense of failure to register to only the duty-to-register element. Instead, I would hold that the offense of failing to register under the statute is violated when one (1) knows or should know that he has a duty to register and (2) intentionally, knowingly, or recklessly fails to comply with that duty to register. Therefore, I would ascribe a culpable mental state to both the duty to register and the failure to register, and not just to the duty to register, as this Court did in Robinson .
Since the evidence was clear that Febus was aware of the registration requirements-the forms he signed, the six years he maintained his registration, and his own testimony-this constituted sufficient evidence that he had knowledge of the duty-to-register element of the offense. The appellate court correctly noted that, under Robinson , the State did not have to prove that Febus had a culpable mental state when failing to provide the correct address. "The evidence shows that the required documents listed the incorrect address *582 and that Febus signed them. That is sufficient evidence to satisfy the second element, failure to comply with the requirements of the statute.... The holding in Robinson is dispositive of this case."[21] Therefore, the court of appeals properly held that the evidence was sufficient to support the jury's determination that Febus knew he had a duty to register.
However, for the reasons outlined above, I believe this Court should overturn Robinson , vacate the decision of the court of appeals, and remand this case so that the court of appeals could assess whether the evidence was legally sufficient to support the jury's verdict that Febus intentionally, knowingly, or recklessly failed to register. Therefore, respectfully, I dissent.

Febus v. State , No. 01-14-000942-CR 2015 WL 6081647, at *3 (Tex. App.-Houston [1st Dist.] 2015) (not designated for publication).

Crabtree v. State , 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) (citing Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ).

Williams v. State , 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

See Margraves v. State , 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), overruled on other grounds , Laster v. State , 275 S.W.3d 512 (Tex. Crim. App. 2009).

Merritt v. State , 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Brooks v. State , 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

Byrd v. State , 336 S.W.3d 242, 246 (Tex. Crim. App. 2011).

Malik v. State , 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Id.

Robinson v. State , 466 S.W.3d 166, 170 (Tex. Crim. App. 2015).

Id. at 170-71.

Id. at 172.

Id. at 169.

Id. at 173-74.

Id. at 174.

Febus , 2015 WL 6081647, at *3.

Robinson , 466 S.W.3d at 174 (Keller, P.J., concurring). Presiding Judge Keller also observed that due process may require that authorities not place significant hurdles to complying with a duty to register beyond those contemplated by the statute. Id. However, in this case, Appellant only raises a challenge to the sufficiency of the evidence, rather than a due process challenge.

Tex. Penal Code § 6.01(a).

Whatley v. State , 445 S.W.3d 159, 166 (Tex. Crim. App. 2014).

Id. (quoting Rogers v. State , 105 S.W.3d 630, 638 (Tex. Crim. App. 2003) ).

Id.

411 S.W.3d 901, 907 (Tex. Crim. App. 2013).

105 S.W.3d 630, 640 (Tex. Crim. App. 2003) (noting that the defendant's testimony did not unambiguously develop the theory that he was "the passive instrument of another's act, i.e. , that, somehow, his finger had been made to exert the requisite fourteen-and-a-half to sixteen pounds of force to squeeze the trigger and fire the gun").

Clayton v. State , 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved those conflicts in favor of the prosecution and therefore defer to that determination.").

Paulson v. State , 28 S.W.3d 570, 571 (Tex. Crim. App. 2000).

Id.

Busby v. State , 990 S.W.2d 263, 267 (Tex. Crim. App. 1999).

Paulson , 28 S.W.3d at 571-72.

This was the basis of Appellant's argument to the jury and to the court of appeals, namely that the jury was required to believe the alleged failure to register was unintentional.

See Williams v. State , 630 S.W.2d 640, 644 (Tex. Crim. App. 1982) (noting that the function of the former defense of "accident" is performed now by the requirement that a person voluntarily engage in the forbidden conduct).

Under Article 62.055(a), if a person who is required to register as a sex offender intends to change his address, he must report in person to the local law enforcement authority and provide the authority with his anticipated move date and new address. A person commits an offense under Article 62.102(a) if that person "is required to register and fails to comply with any requirement of this chapter."

466 S.W.3d 166 (Tex. Crim. App. 2015).

I joined Judge Alcala's concurring opinion, wherein she agreed in upholding Robinson's conviction but disagreed with the majority's decision applying a culpable mental state to only the duty to register and not the failure to register.

This is not surprising. Obtaining an apartment lease is difficult for a registered sex offender since one must list criminal history on a Texas Apartment Association Rental Application for Residents and Occupants.

The indictment charged that Febus did "unlawfully, while a person with a reportable conviction for the offense of indecency with a child, and while subject to registration under the Texas sex offender registration program, and while intending to change his residential address, intentionally and knowingly fail to timely provide in person the defendant's anticipated move date and new address to the local law enforcement authority, Houston Police Department designated as the defendant's primary registration authority, by failing to provide said information in person to said authority at least seven days before the defendant's change of address."

It was not established whether Febus is able to read English.

At the punishment stage, Febus pled true to past convictions for robbery and for being a felon in possession of a firearm, leading to enhancements that set the minimum punishment at 25 years. He had committed these offenses in California under a different name.

Tex. Code Crim. Proc. art. 62.055(a).

Tex. Code Crim. Proc. art. 62.102(a).

Id.

Robinson , 466 S.W.3d at 172 ("We hold ... that the culpable mental states of knowledge and recklessness apply only to the duty-to-register element of Article 62.012's [sic ] failure-to-comply offense.").

Id. at 181 (Alcala, J., concurring).

A review of the 2014 Edition of West Texas Statutes and Codes, Code of Criminal Procedure Chapter 62, reflects a 27-page long statute with over 50 articles, each having multiple sections and subsections.

Under Texas Penal Code section 6.02(b), "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element. Texas Penal Code § 6.02(c) provides that, "If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility."

781 S.W.2d 600 (Tex. Crim. App. 1989).

267 S.W.3d 902 (Tex. Crim. App. 2008).

McQueen , 781 S.W.2d at 603 (quoting Tex. Penal Code § 31.07 ).

341 S.W.3d 417 (Tex. Crim. App. 2011).

Id. at 427.

Id. at 426.

Febus v. State , 2015 WL 6081647, at *3 (Tex. App.-Houston [1st Dist.] 2015). The court of appeals was bound by our decision in Robinson that "the requirement of a culpable mental state applies only to the circumstances of the conduct-the duty to register, not the conduct of failing to do so." Id.