# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00773-CR

**Javier Morales-Ramirez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 16-3188-K368, THE HONORABLE RICK J. KENNON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Javier Morales-Ramirez appeals from his conviction for aggravated assault with a deadly weapon, *see* Tex. Penal Code § 22.02(a)(2), arguing that the evidence is insufficient to support the verdict and that the district court abused its discretion by admitting testimony regarding a hit-and-run automobile accident that occurred just before the collision forming the basis of the assault offense. We will affirm the judgment of conviction.

## BACKGROUND

Morales-Ramirez's prosecution arose from a fatal automobile collision that occurred just before 11:00 p.m. on December 2, 2016, when Morales-Ramirez's vehicle struck pedestrian Sean Kelley in or near a crosswalk at the intersection of Mays Street and Main Street in Round Rock, Texas. At trial, counsel for Morales-Ramirez did not deny Morales-Ramirez was driving the vehicle at the time of the incident. Instead, he argued that Kelley caused his own

injury by being too inebriated to walk safely and that the witnesses were all too inebriated to accurately recall what transpired that night.

Jurors heard testimony from individuals that had seen Morales-Ramirez shortly before the accident, witnesses to the accident, and police officers that observed the resulting injury. Waitress Maria Acuna testified that on the evening of the incident, she was working at a restaurant in a shopping center less than two miles from what would become the accident site. She said she served a table of three men that she recalls as "quite drunk"—so inebriated, in fact, that she refused to serve them any alcohol. She remembered watching them leave around fifteen minutes after arriving and said one of them stumbled and fell outside the door. She testified that when police visited her a few days later, she identified a photo of Morales-Ramirez as one of the three men.

Valeska Reynolds was dating Morales-Ramirez at the time of the incident. Reynolds testified that Morales-Ramirez was out drinking and was "very ugly" that afternoon and evening. She had hoped they would go to dinner together, but he decided to stay out with friends, instead. She recalled that by 8:00 p.m. she "gave up" trying to persuade him. Reynolds testified that she began receiving texts between 10:00 and 10:30 from Morales-Ramirez, who had become disoriented and did not know how to get home. Reynolds left to find him because, she said, she feared he was "too drunk to drive." She intercepted him in the shopping center parking lot and attempted to retrieve the keys to Morales-Ramirez's truck—a silver Dodge Ram—but he was able to keep them from her. She left feeling "very mad" and "very upset" and testified that she did not want him at her apartment that night. On her drive home, she watched as Morales-Ramirez's truck passed her vehicle at a high rate of speed and then raced through two red lights in an apparent attempt to make it to Reynolds's apartment before she did. She did not see his

2

truck strike Kelley, although she saw the truck begin to fishtail after the collision. When Morales-Ramirez arrived at Reynolds's townhouse a few minutes after she did, Reynolds described the truck as "destroyed." She recalled that Morales-Ramirez was "very upset" and kept repeating that he needed to go. She explained he took all her money, over her objections, and was headed back to his truck when officers arrived and prevented him from leaving.

James Carter was in the same shopping center as Morales-Ramirez and Reynolds that night. He testified that he had driven there to use an ATM. As he was attempting to exit the shopping center in his vehicle, he recalled that a silver truck "jumped out in front of [him]" and "cut [him] off," leading him to honk his horn. He testified that the other driver "hit the brakes" and then "stopped his vehicle." Carter recalled that he became "a little nervous" as he watched the truck's reverse lights illuminate and the truck "smash[] right into" Carter's vehicle before "peel[ing] out" of the parking lot. Carter attempted to follow the truck but became "alarmed" when the truck began moving at speeds Carter had "never witnessed before." He called 911, reported the license plate number, and returned to the parking lot to make a police report.

Detective Patrick Turck testified that he was initially dispatched to investigate Carter's incident but was diverted when a call came in about a nearby hit-and-run with injuries. He recalled that he arrived to find Officer Brian Knowles already at the scene and performing CPR on Kelley, although "it was pretty clear . . . that [Kelley] was already deceased." Turck remembered that Kelley had been knocked out of his shoes and one sock by the impact, which in his experience is not uncommon "[f]or high-speed impacts." Turck further testified that he found five eyewitnesses in the crowd and obtained statements from four of them. He recalled that each of these witnesses appeared to have been drinking.

One of the eyewitnesses Turck identified was Johanna Granados. She testified that she and her friends had just finished dinner and drinks and were waiting to cross Mays Street to stop by a piano bar on the opposite side. She remembered stepping into the street when the light changed but recalled that they "all kind of stepped back at the same time" when they saw headlights and a truck "com[ing] really quickly." Granados then recalled hearing "a horribly loud crash" and turning to see a body "flying through the air." She testified that the body landed on the opposite side of the street and "way down on Mays [Street]." She remembered that the truck did not stop but instead "sped up" and drove away.

Bryan Smart was in the same group with Granados that night. He testified that when they began to cross the street, he heard a "revved up" truck coming toward them and pulled his friends back onto the sidewalk. He noticed a man—later revealed to be Kelley—crossing the street nearby. He then heard a "loud noise" and turned to see Kelley's body flying down the street. He estimated the truck was traveling 60 or 70 miles an hour at the time of the collision with Kelley and noticed that the truck made no attempt to slow down or stop "at all." Smart described the intersection as well lighted and testified that it was not too dark to see that night.

Police officer Adam Rankin reconstructed the accident for the jury. He explained "that the pedestrian was struck by the leading edge of the vehicle lower than his center mass, the[n] rotated around that center mass up onto the hood and then was projected off the hood, coming to final rest" 218 feet away from the point of impact. He determined that because the point of impact was the middle of the front of the truck, instead of on the truck's passenger side, Kelley had not "just stepped off the curb" but was instead walking across the street when the truck struck him. Based on the distance, he estimated that Morales-Ramirez was traveling 54 to

4

65 miles an hour at impact—up to 30 miles per hour over the posted speed limit for that stretch of Mays Street. Yet he testified that there was "no indication" of pre- or post-collision braking.

With respect to Kelley, the jury heard testimony that Kelley had been drinking with a friend at a bar near the collision site, that Kelley often "drank a lot," that he stumbled when leaving the bar, and that post-mortem testing revealed a blood-alcohol concentration four times the legal limit for driving. *See* Tex. Penal Code § 49.01(2)(B). After deliberating, the jury returned a verdict of guilty, and the court sentenced Morales-Ramirez to 18 years of confinement with the Texas Department of Corrections. Morales-Ramirez perfected this appeal.

## DISCUSSION

Morales-Ramirez contends that the State produced insufficient evidence to prove he caused Kelley's bodily injury and that the district court abused its discretion in admitting certain evidence.

### Sufficiency of the Evidence

Morales-Ramirez contends the evidence was insufficient to prove that he caused Kelley's injury. We measure the sufficiency of the evidence against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. For the aggravated assault charged here, the hypothetically correct charge would require the jury to find that Morales-Ramirez recklessly caused bodily injury to

5

Kelley and used or exhibited a deadly weapon (i.e., a motor vehicle) during the commission of the assault. *See* Tex. Penal Code § 22.02(a)(2).

In evaluating a sufficiency challenge, we consider all the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). This standard requires us to presume that the jury "resolved any conflicting inferences from the evidence in favor of the verdict" and to defer to that resolution because "jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony." *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). Our role on appeal is limited to ensuring that "the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).

Morales-Ramirez argues that Kelley was too inebriated to walk in a safe manner and that Kelley would not have been injured if he had been sober and thus that Morales-Ramirez did not cause Kelley's bodily injury. The Penal Code contemplates concurrent causation, providing that a defendant "is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the [defendant] clearly insufficient." *See* Tex. Penal Code § 6.04(a). The jury heard evidence that Kelley was inebriated at the time of the incident and had "stumbled" out of a bar shortly before the collision. But the jury also heard testimony that Kelley was crossing the street on a green light—just like the other eyewitnesses had intended to do before seeing and hearing the truck. Additional

6

evidence indicated that Morales-Ramirez had been drinking heavily, was speeding down a road crowded with pedestrians, and had deliberately "smashed into" Carter's vehicle shortly before striking Kelley. Morales-Ramirez complains that every one of the eyewitnesses had been drinking alcohol the night of the collision and cannot be expected to recall the incident accurately. However, weighing witness credibility and resolving questions of fact lie within the exclusive province of the jury. *See Febus*, 542 S.W.3d at 572. Further, given the overwhelming evidence of Morales-Ramirez's intoxication and the recklessness of his driving, even if the jury believed Kelley was inebriated that night, a rational juror still could have concluded that Morales-Ramirez was criminally responsible for the bodily injury that Kelley sustained from the collision. *See Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986) (explaining that outside cause will excuse defendant from criminal liability only when outside cause was by itself enough to cause result *and* defendant's conduct was not by itself enough to cause result; defendant is still criminally liable when defendant's conduct and other cause together are sufficient to cause harm). The evidence at trial established a "but for" causal connection between appellant's conduct and the resulting bodily injury to Kelley. *See id.* ("If concurrent causes are present, two possible combinations exist to satisfy the "but for" requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause *together* may be sufficient to have caused the harm."). The evidence is therefore sufficient to support the verdict, and we overrule Morales-Ramirez's issue.

**Evidentiary Challenge**

Morales-Ramirez contends the court abused its discretion by admitting evidence of the hit-and-run collision with Carter, characterizing it as inadmissible character-conformity evidence under Rule 404(b). We disagree. Rule 404(b) provides, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b)(1). As one of our sister courts has explained, "The rule and its concept envisioned *past* crimes and offenses" admitted as evidence of character. *Hill v. State*, 888 S.W.2d 255, 258 (Tex. App.—Beaumont 1994, no pet.) (emphasis added); *see also Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016) (observing that Rule 404(b) is "a rule of inclusion rather than exclusion" that excludes only evidence of past acts used "solely for proving bad character and conduct in conformity with that bad character").

Here, the State's did not introduce a past bad act as evidence that Morales-Ramirez acted in conformity with any character trait. Instead, the earlier collision occurred just minutes before Morales-Ramirez struck Kelley and was part of the same driving spree that resulted in the fatality. Thus, the evidence provided the context of the fatal collision. *See Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) ("Evidence of another crime, wrong, or act also may be admissible as same-transaction contextual evidence . . . ."); *Hill*, 888 S.W.2d 258 (rejecting Rule 404(b) challenge to testimony regarding "the present, dramatic, horrendous acts by appellant" where those acts were contemporaneous with the alleged offense). In addition, the evidence rebutted Morales-Ramirez's defense that Kelley's acts caused his own injury. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (explaining that rebuttal of defensive theory is "one of the permissible purposes for which [relevant] evidence may be

8

admitted under Rule 404(b)"). The admission of the evidence, therefore, did not violate Rule 404(b)'s prohibition on character-conformity evidence, and the district court did not abuse its discretion in admitting that evidence. We overrule the issue.

## CONCLUSION

Having overruled Morales-Ramirez's issues on appeal, we affirm the district court's judgment of conviction.

_____
Edward Smith, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed:   April 29, 2020

Do Not Publish