

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00044-CR

———————————————————

BRADLEY WAYNE THOMAS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 1
Denton County, Texas
Trial Court No. CR-2020-01729-A

---

Before Sudderth, C.J.; Birdwell and Walker, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

A jury convicted Appellant Bradley Wayne Thomas of Class A misdemeanor assault against a family member.[1] Tex. Penal Code Ann. § 22.01(a)(1), (b). In one issue, Thomas asserts that the evidence is insufficient to support his conviction. We disagree and affirm the trial court's judgment.

## I. BACKGROUND

In December 2019, Thomas lived with the complaining witness (C.W.) and her children, as well as other members of Thomas's family.[2] Thomas and C.W. are the parents of the youngest of C.W.'s children. She also has an older child, a son, who lived with them.

On December 27, Thomas and C.W. began a text message argument that lasted into the next day. After Thomas sent C.W. some text messages that she ignored, he came into her bedroom where she was sitting on the bed and started screaming. The argument escalated. Thomas called C.W. a "bitch," and C.W. made an obscene gesture at Thomas. Thomas raised a hand as if to hit C.W., and C.W. turned her head. According to C.W., Thomas then struck or slapped her on the back of her head; although she felt the "smack[]" she did not see it.

---

[1]The court made a finding of family violence under Code of Criminal Procedure Article 42.013. *See* Tex. Fam. Code Ann. §§ 71.003, .005

[2]We use this pseudonym to protect the identity of C.W.'s and Thomas's minor children. *See* Tex. R. App. P. 9.10.

C.W. tried to call the police, but she and Thomas began to wrestle over her phone. She slid off the side of the bed, and Thomas left the room with her phone. C.W. called out to her son, who was also in the house, for help; screamed for him to call 911; and fled, eventually attempting to hide in a bathroom with her son.

While C.W. tried to lock the bathroom door, Thomas forced it open. The door hit C.W. in the face and slammed her head against the wall, which chipped her tooth and caused welts on the front and back of her head. Thomas charged into the bathroom and took C.W.'s son's phone away from him.

At some point in the fight, a call connected to 911,[3] transmitting the sound of C.W. and Thomas loudly yelling at one another. C.W. can be heard on the recording of the 911 call telling Thomas that he hit her and slammed her head against the door; Thomas responds that he pushed the door open, but it did not hit her.

After Thomas came into the bathroom, C.W. started screaming as loudly as she could, got between him and her son, and opened the window. C.W. helped her son climb out of the window and attempted to follow him out. Thomas grabbed her wrist and pulled her back in, but she then fled out the window. C.W. and her son left the house in their car and flagged down an officer who was responding to the emergency call at the residence.

---

[3]C.W.'s child denied calling 911; he said that he put the numbers into his phone but was too scared to hit the send button. C.W. had also yelled for "Alexa," the digital assistant application, to call 911.

During the investigation, Denton County Sheriff's Deputy James Ward saw marks on C.W. that he found were consistent with her description of the bathroom door's hitting her and causing bumps on the front and back of her head and chipping her tooth. She also told him that Thomas had hit her on the back of her head with his right hand while her head had been turned to the left, a maneuver Deputy Ward at the time thought would be physically and logically impossible. Nevertheless, deputies arrested Thomas because of C.W.'s observable injuries.

At trial, the jury heard testimony from the Denton County dispatcher who took the 911 call, C.W., C.W.'s son, the four officers who responded to the 911 call, and Thomas. Thomas denied hitting C.W. and denied raising his voice. Thomas claimed that he had raised his hand in a dismissive "knock it off" motion, which he described to investigating officers as a "faux hit." He admitted wrestling the phone away from C.W. after she said she would call 911 and testified that, by the time of trial, he knew he had committed a crime[4] by doing so. The State questioned him at length about inconsistencies between his testimony at trial and his statements recorded on police body cameras on the day.

## II. DISCUSSION

Thomas raises a single issue challenging the sufficiency of the evidence to prove that he struck C.W. with his hand; that C.W. suffered bodily injury from being

---

[4]*See* Tex. Penal Code Ann. § 42.062. Thomas was not charged with the offense of interfering with a 911 call.

struck with the door; and that he intentionally, knowingly, or recklessly caused her bodily injury by opening the door.

## A. STANDARD OF REVIEW

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences

5

in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

Here, to convict Thomas of Class A misdemeanor assault, the jury had to determine beyond a reasonable doubt that Thomas intentionally, knowingly, or recklessly caused bodily injury to C.W. by striking her with his hand or by striking her with a door. Tex. Penal Code Ann. § 22.01(a)(1).

**B. ANALYSIS**

Thomas argues that the evidence was insufficient to prove that he hit C.W. with his hand; that he caused injury to C.W. by hitting her with the bathroom door; and that he intentionally, knowingly, or recklessly caused C.W. injury.

Thomas argues that C.W.'s claim that he hit her in the bedroom is "factually impossible" because (1) Deputy Ward stated on his body camera recording that he did not think that Thomas could have hit C.W. on the back of the head with his right hand while she was facing her left and (2) while Deputy Ward was talking to C.W., she said she was not feeling pain "right now."

C.W. testified that Thomas had rushed toward her with his hand raised and smacked her with an open hand on the back of her head, and the hit stung. Thomas testified that he did not hit C.W. on the back of the head; he testified that when he entered the room, he was standing more than five feet away from her, and when he raised his hand as if to say "knock it off," she said, "you hit me."

Deputy Ward testified at trial that, although C.W.'s story that she gave at the scene about the head slap did not make sense to him at the time, it could have happened that way if she had not remembered which hand Thomas had used. That Deputy Ward questioned C.W.'s contemporaneous account of the head slap does not change this conclusion. Deputy Ward testified that although C.W.'s explanation about the head slap did not make sense to him at the time, he conceded that Thomas nevertheless could have hit C.W. the way she had described if she had been mistaken

7

in telling Deputy Ward that Thomas had used his right hand to hit her. According to Deputy Ward, C.W. had told him that she did not remember "exactly" which hand Thomas used to hit her. Deputy Ward agreed that victims of domestic violence "might not always remember exactly the way things happened" because of the stress and speed of events.[5] When asked if C.W.'s "not remembering which hand [Thomas] hit her with [was] inconsistent with her story," Deputy Ward answered, "No." He agreed that he had found C.W. credible and would not have arrested Thomas otherwise.

The jury, as factfinder, was free to judge the weight and credibility of C.W.'s, Deputy Ward's, and Thomas's testimonies and to resolve any conflicting inferences therefrom. Even if C.W. had turned her head to the left and thereby presented Thomas with the back of her head, the jury still could have believed that he landed that blow with his right hand as she originally described. The jury could also have believed that the blow occurred in another manner based upon its evaluation of the credibility of the testimony and other evidence presented.

Viewing all the evidence admitted at trial in the light most favorable to the verdict, we conclude that a rational jury could have found that Thomas struck C.W. with an open hand, causing pain. *See id.*; *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Ellis v. State*, No. 05-15-00950-CR, 2017 WL 343592, at *3 (Tex. App.—Dallas Jan. 18,

---

[5]The testifying officers described C.W.'s demeanor as "[d]istraught," "upset," "fearful," and "timid." They thought she looked like she had been crying.

2017, no pet.) (mem. op., not designated for publication). Because the evidence was sufficient to prove this manner and means of assault, we need not address the parts of Thomas's issue challenging the alternative manner and means alleged. *See* Tex. R. App. P. 47.1; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999) (noting that when alternate manner and means are charged, sufficient evidence of just one supports the verdict).

We overrule Thomas's sole issue.

### III. CONCLUSION

Having overruled Thomas's sole issue, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 27, 2024