Opinion filed January 4, 2024



## In The

# Eleventh Court of Appeals

_____

## No. 11-22-00261-CR
_____

## JAMES EDWARD HARRELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 23429-B**

### M E M O R A N D U M   O P I N I O N

Appellant, James Edward Harrell, was indicted for the second-degree felony offense of aggravated assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West Supp. 2023). A jury found Appellant guilty of the indicted offense and assessed his punishment at ten years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. In his sole issue on appeal, Appellant argues that the evidence is insufficient to support the jury's finding of guilt for the charged

offense because the State failed to prove beyond a reasonable doubt that Appellant did not act in self-defense. We affirm.

## I. *Factual Background*

The underlying offense arises from a dispute between two neighbors, which resulted in Appellant being shot. Appellant and his neighbor, Jerry Wrightsil, had known each other for approximately three years prior to this incident; Jerry testified that he and Appellant "never got along." According to Jerry, Appellant had a "[b]ad reputation" for violence and he feared Appellant.

On October 17, 2021, Jerry was at his trailer with several family members. At some point, Jerry noticed that Appellant's dogs were in Jerry's yard causing a commotion with his dogs; this prompted Jerry to go outside to retrieve his dogs. Jerry testified that once he was outside, he asked Appellant "not to let his dogs run in [Jerry's] yard" because Jerry's dogs were aggressive. Appellant told Jerry that "[Jerry's] dog [was] not s--t." Appellant's dogs were restrained by a leash; Appellant eventually released his dogs, and they attacked Jerry's dogs.

During the dogfight, Jerry's dogs ran across the street, and Jerry followed to retrieve them. Jerry testified that he grabbed his handgun and held the firearm at his side as he crossed the street because he "kn[e]w [Appellant's] M.O." As this was occurring, Appellant shouted to Jerry that he "better get these dogs before [Appellant] start[s] sticking them." Jerry, having noticed that Appellant had pulled a knife from his back pants pocket, thought that the phrase "sticking them" meant Appellant intended to stab Jerry's dogs. As Jerry reached down to get his dogs, Appellant lunged and swung at him with the knife. Jerry testified that, at the time, he believed that Appellant was "[trying] to decapitate [him]." Jerry testified that he "feared for [his] life," and he subsequently shot Appellant to "get him away."

Shortly after the shooting, Sergeant Kevin Ohnheiser with the Abilene Police Department received a call from dispatch concerning an injured person. When

2

Sergeant Ohnheiser arrived at the scene, he saw Appellant laying in front of a trailer house with a gunshot wound to his left thigh. Sergeant Ohnheiser then crossed the street to locate the suspected shooter. Sergeant Ohnheiser testified that Jerry was sitting on his front porch when he acknowledged the officer, identified himself, and admitted that he was the shooter. After Appellant was transported to the hospital, Detective Jeff Cowan arrived at the scene to collect evidence; he recovered a knife with apparent blood on it, Jerry's handgun, and a spent bullet casing. Detective Cowan also received a video recording of the incident, which was recorded by Jerry's nephew.

Detective Cowan later visited the hospital where Appellant was recovering and interviewed Appellant and his wife. After completing his investigation, Detective Cowan concluded that Appellant was both the primary actor and the aggressor during the incident.

## II. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Similarly, when a defendant challenges the sufficiency of the evidence to support the rejection of a defense by him, such as self-defense, we examine all of the evidence in the light most favorable to the verdict to determine whether a rational jury could have found the defendant guilty of all essential elements of the charged

offense beyond a reasonable doubt and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *see also Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018) (reaffirming *Saxton*).

To support a claim of self-defense, the defendant bears the burden to produce some evidence to support the claim; the State bears the burden of persuasion to disprove the raised defense. *Braughton*, 569 S.W.3d at 608 (citing *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton*, 804 S.W.2d at 913–14). Once the defendant produces that evidence, the State's burden does not require the production of additional evidence to disprove the defense; instead, it requires only that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594–95.

When a defendant raises a justification defense, such as self-defense, a determination of guilt by the jury is an implicit rejection of the defensive theory. *Zuliani*, 97 S.W.3d at 594–95; *Saxton*, 804 S.W.2d at 914. As such, because a claim of self-defense is a fact issue to be determined by the jury, the jury is free to accept or reject the defensive theory, either version of the facts, and any part of a witness's testimony. *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018); *see Saxton*, 804 S.W.2d at 912 n.3.

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. This deference accounts for the factfinder's duty to resolve conflicts in the

4

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that the evidence directly prove the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

### III. *Analysis*

In his sole issue, Appellant argues that the evidence is insufficient to support the jury's rejection of his claim of self-defense. We disagree.

A person commits the offense of assault if he "intentionally or knowingly threatens another with imminent bodily injury." PENAL § 22.01(a)(2). The assault becomes a second-degree felony if a person "uses or exhibits a deadly weapon during

5

the commission of the assault." *Id.* § 22.02(a)(2). Here, the jury found Appellant guilty of the offense of aggravated assault, and there is sufficient evidence in the record for the jury to have found all the essential elements of this offense beyond a reasonable doubt. We note, however, that Appellant does not contend that the State failed to prove beyond a reasonable doubt any of the essential elements of aggravated assault; rather, Appellant limits his argument to the sufficiency of the evidence to support his claim of self-defense.

Under appropriate circumstances, a defendant may affirmatively raise the claim of self-defense if the use of force is "justified." *Braughton*, 569 S.W.3d at 606; *see also Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). In asserting self-defense, the use of force is justified "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." PENAL § 9.31(a) (West 2019). Similarly, the use of deadly force against another is justified under the above circumstances "if the actor would be justified in using force against the other" under Section 9.31 and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a).

"The *reasonably believes* language within these statutes contain subjective and objective components." *Lozano v. State*, 636 S.W.3d 25, 32 (Tex. Crim. App. 2021) (emphasis added). First, a "defendant must subjectively believe that another person used or attempted to use unlawful force (Section 9.31) or deadly force (Section 9.32) against the defendant and that the defendant's use of unlawful or deadly force in response was immediately necessary." *Id.* "*Deadly force* means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3) (emphasis added). Second, a defendant's belief must be objectively reasonable, as

6

a *reasonable belief* is a belief that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id.* § 1.07(a)(42). An actor's belief that deadly force was immediately necessary is presumed to be reasonable if (1) the actor knows or has reason to believe that the person against whom the deadly force was used was committing or attempting to commit an enumerated offense described by the statute; (2) the actor did not provoke the person against whom the force was used; and (3) the actor was "not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used." *See id.* § 9.32(b).

Evidence of self-defense may be raised by "other witnesses's testimony about the defendant's acts and words at the time of the offense." *Lozano*, 636 S.W.3d at 33 (citing *Smith v. State*, 676 S.W.2d 584, 585 (Tex. Crim. App. 1984)).

Appellant points to the following evidence in support of his contention that the jury acted irrationally when it did not find in favor of Appellant on his claim of self-defense: (1) Jerry admitted that he crossed the street toward Appellant with a gun in his hand before he shot Appellant; (2) Jerry stated that he believed Appellant was acting "defensive;" and (3) Jerry had been convicted of a crime of violence, had a reputation for violent propensities, and had a reputation for carrying a firearm.

At the outset, we note that there is scant evidence that Appellant subjectively believed that Jerry intended to commit an offense under the statute, such as murder, which would justify Appellant's use of deadly force against him. *See* PENAL § 9.32(a)(2)(B). Nevertheless, we conclude that there is sufficient evidence in the record that rebuts the presumption that Appellant's actions were reasonable under Section 9.32(b).

Detective Cowan testified that he interviewed Appellant and his wife after the shooting occurred while Appellant was hospitalized. Appellant told Detective Cowan that he did not have any weapons in his possession at the time of the shooting,

7

and he reiterated this fact later during the interview. Appellant's wife, Daniela Harrell, corroborated Appellant's version of events, and she told Detective Cowan that she believed that all of Appellant's knives were accounted for at their home after the shooting had occurred. Interestingly, Appellant did not make any statements to law enforcement indicating that he believed that he was acting in self-defense. Rather, Appellant only denied possessing a weapon at any time during the altercation with Jerry. Contrary to the statements made by both Appellant and Daniela during the interview, the officers at the scene recovered a knife with apparent blood on it. Further, the video recording of the incident that was provided to law enforcement shows Appellant holding a knife and swiping it toward Jerry's head prior to Appellant being shot.

Additionally, Daniela testified concerning a confrontation between Appellant and Jerry that involved Appellant's dog, which occurred approximately three weeks before the shooting incident. Daniela further testified that Jerry had a propensity to carry firearms.

Appellant's stepdaughter, Jlynn Llewellyn, testified regarding an incident that had occurred at Family Dollar approximately two months prior to this offense. During their interaction, Jerry and Jlynn were backing out of the Family Dollar parking lot at the same time when Jerry stepped out of his vehicle, and, according to Jlynn, Jerry threatened her with a gun. Jlynn testified that she then left the parking lot and drove to a 7-Eleven; Jerry followed her there and proceeded to "cuss at [her.]" Jlynn later told Appellant about this incident, but stated that she never reported it to the police. The record also shows that Jerry had been previously convicted of committing domestic abuse against his wife.

Jerry's wife, Aretha Cork, testified that she was at Family Dollar with Jerry on the same day as the incident that Jlynn testified about; however, according to Aretha, she did not witness any altercation between Jerry and Jlynn. Aretha testified

8

that Jlynn followed Jerry to 7-Eleven and the two individuals cursed at each other. According to Aretha, Jlynn did not appear to be afraid of Jerry. Additionally, Aretha testified that Jerry does not normally carry a gun, and that Jerry is not a violent person despite his previous domestic violence charge whereby she was the victim of that offense.

Considering the record as a whole, there is some evidence indicating that Appellant could have subjectively believed that his actions were reasonable under the circumstances, because, according to Appellant, Jerry was brandishing a handgun as he crossed the street, and there is conflicting evidence in the record concerning prior altercations between Jerry, Appellant, and Jlynn. However, when the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326. Thus, the jury was free to assess the credibility of the witnesses and rationally determine based on the evidence presented that Appellant's subjective belief that deadly force was immediately necessary was not reasonable. *See Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *Barron v. State*, 630 S.W.3d 392, 404 (Tex. App.—Eastland 2021, pet. ref'd).

A reasonable jury could have also concluded that Appellant provoked the altercation, thereby rebutting the presumption that Appellant's belief that the use of force was reasonable under Section 9.32(b). *See* PENAL § 9.32(b)(2). Jerry testified that Appellant escalated the situation because Appellant released his dogs from their leash, which caused Jerry's dogs to attack Appellant's dogs and run across the street. As Jerry crossed the street to retrieve his dogs, he noticed that Appellant had pulled a knife out of his back pocket, further escalating the situation. A witness during the State's case-in-chief, Lapaul Scaggs, observed the altercation and testified that his son recorded the event on his cell phone. Lapaul further testified that while Jerry was on the street walking to the sidewalk, Appellant had already reached for and

removed his knife from his pocket as Jerry reached the sidewalk. Jerry also testified to these facts and stated that "not one time did I point that gun at [Appellant] until he swung that knife at my neck."

The video recording of the incident further supports Jerry's testimony. In the video, Appellant can be seen removing a knife from his back pocket while Jerry is crossing the street. At this time, Jerry is holding his handgun at his side, and the muzzle of his handgun is pointed at the ground. Appellant then swings his knife toward Jerry's head—attacking first—while Jerry's handgun is still at his side and pointed at the ground. The video then pans away from Appellant and Jerry prior to the sound of an audible gunshot.

Detective Cowan testified that, after completing his investigation, he believed that Appellant was both the primary actor and the aggressor during the incident. Additionally, in his interview with Detective Cowan, Appellant told the officers that, at the time of the incident, "[he] knew [Jerry] had a gun" and that Appellant told Jerry to "put your gun up and then we'll fight," but that Jerry "did not want to do that." Here, the jury was presented with some evidence that Appellant was on his side of the street when the altercation occurred, but there is no evidence or testimony that Appellant was located on his own property at the time of the shooting. Thus, the evidence does not support the presumption that Appellant's actions were reasonable when he committed this offense, as there is sufficient evidence that Appellant provoked the altercation. *See Smith v. State*, 965 S.W.2d 509, 519 (Tex. Crim. App. 1998).

The evidence further supports the jury's rejection of Appellant's claim that his actions were objectively reasonable under the circumstances. *See Winfrey*, 393 S.W.3d at 767; *Clayton*, 235 S.W.3d at 778. Jerry testified that, prior to this event, Appellant had a "bad reputation" for violence and that he was personally fearful of Appellant. Appellant escalated the situation when he (1) made inflammatory

10

statements to Jerry; (2) "unleashed" his dogs, which allowed them to attack Jerry's dogs; and (3) reached for and pulled a knife from his pants pocket as Jerry was crossing the street. Appellant then swung his knife toward Jerry's neck, as Jerry was retrieving his dogs, in an attempt "to decapitate [Jerry]." When Appellant swiped his knife, video evidence shows that Jerry's handgun was still at his side and pointed at the ground. Jerry also referred to various surgeries and other health conditions personal to him, which made him particularly fearful of Appellant's knife attack toward his neck area. Because Jerry "feared for [his] life" when Appellant swung a knife at him, Jerry shot Appellant.

From the evidence presented, we conclude that a rational jury could have found that Appellant's use of force was neither reasonable nor justified. Because much of the evidence presented on this issue was based on witness testimony, Appellant's theory of self-defense was inherently a credibility determination for the jury to resolve. *See Febus*, 542 S.W.3d at 572; *Barron*, 630 S.W.3d at 404. Thus, because the credibility of Appellant's claim of self-defense was solely within the jury's province to determine, the jurors were free to reject Appellant's claim of self-defense and find him guilty beyond a reasonable doubt for the offense of aggravated assault. *See Saxton*, 804 S.W.2d at 914; *see also Braughton*, 569 S.W.3d at 611–13; *Barron*, 630 S.W.3d at 404. In the absence of evidence in the record indicating that the jury was irrational in their rejection of Appellant's claim of self-defense, we decline to substitute our view of the witnesses' credibility for that of the jury. *See Saxton*, 804 S.W.2d at 914. Here, the jury's determination of Appellant's guilt is tantamount to a rejection of his claim of self-defense, and the jury was free to reject this defense and Appellant's version of events. *See Braughton*, 569 S.W.3d at 609; *Saxton*, 804 S.W.2d at 914; *see also Febus*, 542 S.W.3d at 572.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the State adduced sufficient evidence from which a rational trier of

11

fact could have found, beyond a reasonable doubt, all the essential elements of aggravated assault and also could have found against Appellant on his claim of self-defense. *See Jackson*, 443 U.S. at 319; *Isassi*, 330 S.W.3d at 638. Accordingly, we overrule Appellant's sole issue on appeal.

IV. <em>This Court's Ruling</em>

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE

January 4, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.