**Opinion filed April 30, 2025**



## In The

# Eleventh Court of Appeals

_____

## No. 11-23-00073-CR

_____

### JOSEPH ALLEN BAKER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause Nos. 14233, 14235, 14242, 14269, 14377, 14378, 14379, &**
**14380**

### M E M O R A N D U M   O P I N I O N

In a single trial involving eight cases, the jury found Appellant, Joseph Allen Baker, guilty of sexual offenses committed against the same victim, L.D.A., when she was a child.[1]  Appellant filed a notice of appeal in each trial court case.  We consolidated the eight appeals into a single appellate cause number.

---

[1]Appellant was indicted for nine criminal offenses.  The jury acquitted him of sexual assault of a child in trial court cause no. 14229.

In trial court cause no. 14233, the jury convicted Appellant of indecency with a child by sexual contact, alleged to have occurred on or about May 1, 2010, by touching the genitals of L.D.A. with the intent to arouse or gratify his sexual desire. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c) (West 2019). The jury assessed Appellant's punishment at confinement for twelve years in the Institutional Division of the Texas Department of Criminal Justice.

In trial court cause no. 14235, the jury convicted Appellant of sexual assault of a child alleged to have occurred on or about May 15, 2010, by penetrating the sexual organ of L.D.A. with Appellant's sexual organ. *See id.* § 22.011(a)(2) (West Supp. 2024). The jury assessed Appellant's punishment at confinement for twenty years in the Institutional Division of the Texas Department of Criminal Justice.

In trial court cause no. 14242, the jury convicted Appellant of indecency with a child by sexual contact alleged to have occurred on or about June 15, 2010, by touching the genitals of L.D.A. with the intent to arouse or gratify his sexual desire. *See id.* § 21.11(a)(1), (c). The jury assessed Appellant's punishment at confinement for twelve years in the Institutional Division of the Texas Department of Criminal Justice.

In trial court cause no. 14269, Appellant pleaded guilty to the sexual assault of L.D.A. alleged to have occurred on or about November 1, 2010, by causing the penetration of the sexual organ of L.D.A. with Appellant's sexual organ. *See id.* § 22.011(a)(2). The jury assessed Appellant's punishment at confinement for twenty years in the Institutional Division of the Texas Department of Criminal Justice, and it assessed a fine of $10,000.

In trial court cause no. 14377, the jury convicted Appellant of aggravated sexual assault of L.D.A. alleged to have occurred on or about July 26, 2006, by causing the penetration of L.D.A.'s sexual organ with Appellant's sexual organ.

2

*See id.* § 22.021(a). The jury assessed Appellant's punishment at confinement for sixty years in the Institutional Division of the Texas Department of Criminal Justice.

In trial court cause no. 14378, the jury convicted Appellant of aggravated sexual assault of L.D.A. alleged to have occurred on or about July 26, 2004, by penetrating L.D.A.'s sexual organ with Appellant's sexual organ. *See id.* The jury assessed Appellant's punishment at confinement for sixty years in the Institutional Division of the Texas Department of Criminal Justice.

In trial court cause no. 14379, the jury convicted Appellant of aggravated sexual assault of L.D.A. alleged to have occurred on or about July 26, 2003, by penetrating L.D.A.'s sexual organ with Appellant's sexual organ. *See id.* The jury assessed Appellant's punishment at confinement for sixty years in the Institutional Division of the Texas Department of Criminal Justice.

Finally, in trial court cause no. 14380, the jury convicted Appellant of aggravated sexual assault of L.D.A. alleged to have occurred on or about July 26, 2005 by penetrating L.D.A.'s sexual organ with Appellant's sexual organ. *See id.* The jury assessed Appellant's punishment at confinement for sixty years in the Institutional Division of the Texas Department of Criminal Justice.

Each judgment of conviction recites that Appellant's sentences are to run concurrently. Other than in trial court cause no. 14269, the jury did not assess any fines.

Appellant brings two issues on appeal. In his first issue, he challenges the sufficiency of the evidence to support his convictions in trial court cause nos. 14233, 14235, 14242, 14377, 14378, 14379, and 14380. His second issue is predicated on his first issue; he contends that the erroneous convictions negatively affected his punishment in trial court cause no. 14269. We modify and affirm.

*Background Facts*

L.D.A. was twenty-seven years old at the time of trial in 2023.[2] She testified that her mother began dating Appellant when L.D.A. was a toddler. Appellant and L.D.A.'s mother broke up when L.D.A. was almost eight. L.D.A. testified that she remained close to Appellant after the break up, and that she visited him many times in Sweetwater at his home. In that regard, L.D.A. believed for several years that Appellant might be her biological father. She testified that she grew up with Appellant as her father figure. L.D.A. lived with Appellant in Sweetwater when she was fourteen, staying with him until she was fifteen. L.D.A. moved in with Appellant because things had gotten chaotic at her mother's house and her mother was in a new relationship.

L.D.A. testified that Appellant began touching her inappropriately when she was "probably about four" "on or around [her] vagina area." She further testified that Appellant also asked her to touch his penis. L.D.A. testified that Appellant touched her inappropriately "hundreds" of times and that the touching progressed as she got older. Appellant touched her with his fingers, mouth, and penis on her vaginal area and her chest.

L.D.A. stated that Appellant eventually began penetrating her vagina with his finger, and then at some point he began penetrating her vagina with his penis. She estimated that Appellant began having sexual intercourse with her when she was twelve or thirteen. L.D.A. further testified that Appellant had sexual intercourse with her in Nolan County both before and after she was fourteen. She estimated the total number of times that Appellant had sexual intercourse with her to be thirty times. L.D.A. estimated that Appellant had sexual intercourse with her when she

---

[2]Based on her age at the time of trial in January 2023, Appellant was born sometime in 1995.

4

was under fourteen "approximately five or ten" times, and that it happened an additional "ten to 15 . . . 20 [times] maybe" when she was fourteen or fifteen.

In 2011, when L.D.A. was fifteen, she attempted to commit suicide. This occurred when she was living with her grandmother in Henderson County. L.D.A. made an outcry to her grandmother at the time and she was interviewed by the Child Advocacy Center in Henderson County. Sheila Davis was the forensic interviewer in Henderson County that interviewed L.D.A. in 2011. She testified that L.D.A. was reluctant to talk about the sexual abuse.

Susan Hinson was a sexual assault nurse examiner in Tyler. She examined L.D.A. in 2011 based on the reported abuse. Because more than ninety-six hours had passed between the alleged assaults and her examination of L.D.A., Hinson was unable to do an acute examination of L.D.A. However, Hinson observed a partially transected hymen, which she testified was consistent with L.D.A.'s history. Hinson testified that L.D.A. gave her the following narrative of what had transpired with Appellant:

> It was pretty much all the time when he could. The Summer I turned 11, I had a headache. I came back from my birthday party. He lived in the RV. He ran the car through the fence. He gave me medicine. I got tired. He was laying on the bed. He kept touching me with the wall. I don't remember everything. That was first time he put his penis in my private part. When I moved in with him last of April, beginning of May, pretty much all the same stuff. He's always complimented me on stuff.

L.D.A. was first contacted by someone from Nolan County in 2022. Nothing happened between 2011 and 2022 with L.D.A.'s report of sexual abuse because of an oversight at the Sweetwater Police Department. Detective Armando Renteria, formerly of the Sweetwater Police Department, was the Nolan County officer that discovered the file while examining old files at the department. Detective Renteria began working the file upon its discovery.

5

Special Agent Josh Sams of the Texas Department of Public Safety conducted a recorded interview of Appellant in March 2022. This recorded interview of Appellant was admitted into evidence. At the beginning of the interview, Appellant stated that he knew about L.D.A.'s report because he talked to someone about it ten years ago. Appellant came to the conclusion at the time that he did not have anything to worry about. He opined during this interview that L.D.A.'s report was "all made up, every bit of it." He described L.D.A. as "very troubled." Appellant stated that "you can't believe anything that comes out of her mouth."

In June 2022, Special Agent Michelle Wilson of the Texas Department of Public Safety conducted a second recorded interview of Appellant. This second interview was in two parts. During the first part of the recorded interview, Appellant described L.D.A. as hard-headed, and stated that she did not like his rules when she lived with him. He opined that she was disrespectful and a liar. Appellant believed that L.D.A. was mad at him because he sent her back home to live with her mother. During the initial part of the interview, Appellant denied that either he or L.D.A. had seen each other naked, and he denied all of her allegations.

After an approximately fifty-minute break in the second recorded interview, the second part of the interview began with Appellant confessing that he had sex with L.D.A. twice "when she was fifteen."[3] Appellant stated that it was L.D.A.'s idea each time, that she wanted "to try something out," and that she was "very forward." Appellant also stated that he called L.D.A. a liar because he did not want to spend the rest of his life in prison. The second interview concluded with Appellant writing the following letter to L.D.A.:

> [L.D.A.], I need to tell you that I'm sorry for what happened between us. I have always been sorry, and I never meant to hurt you. I hope

---

[3]During closing argument, Appellant's defense counsel explained that Appellant only pleaded guilty to one act of sexual assault because of the alleged dates of occurrence in relation to L.D.A.'s age.

you can forgive me. I can only assume that I will be going away for the rest of my life, but I guess it's what I deserve. Please forgive me and know that I love you. I always have and I always will.

Love, Joe (Dad)

During his case-in-chief, Appellant called his mother, Barbara Baker, as a witness. Baker observed that L.D.A. had a strong personality and that she was not afraid of Appellant. She believed that L.D.A. fabricated the allegations because Appellant made her move back home. Appellant's sister, Tabitha Burnett, testified that as far as L.D.A.'s truthfulness was concerned, "[i]t was her way or you would pay" and that "[s]he liked to bend the truth to her need." Burnett also testified that she never observed L.D.A. being fearful of Appellant.

Finally, Appellant called his aunt, Patricia McGowan, as a witness. When asked about L.D.A.'s truthfulness, she stated: "I'm going to say for the most part she's, I guess, truthful, but there's times that if it benefits her, she kind of goes outside the lines and does things the way she wants done, you know? If she wants something, she's going to make it happen." McGowan also testified that L.D.A. was not afraid of Appellant. McGowan did not believe the allegations that L.D.A. was making and she speculated that maybe L.D.A.'s mother put her up to making the allegations because the mother is bitter and vindictive.

*Analysis*

In his first issue, Appellant asserts that there was insufficient evidence to support the jury's guilty verdicts in trial court cause nos. 14233, 14235, 14242, 14377, 14378, 14379, and 14380. He contends that "no rational trier of fact could have believed L.D.A.'s testimony." Appellant asserts that "[t]he evidence undermining L.D.A.'s credibility was overwhelming," and that there was a lack of forensic evidence supporting her account.

7

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead,

appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

We measure sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

As relevant to this case, a person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly "causes the penetration of the . . . sexual organ of a child by any means" and "the victim is younger than 14 years of age." PENAL § 22.021(a)(1)(B)(i), (a)(2)(B). A person commits the offense of sexual assault of a child if the person intentionally or knowingly "causes the penetration of the . . . sexual organ of a child by any means." *Id.* § 22.011(a)(2)(A), (c)(1).

A person commits indecency with a child by contact by engaging in sexual contact with the child or causing the child to engage in sexual contact. *Id.* § 21.11(a)(1). "Sexual contact" includes the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: any touching by a person, including touching through clothing, of any part of the genitals of a child. *Id.* § 21.11(c)(1). The State is not required to prove that the defendant was actually aroused; the offense only requires that the alleged act be committed with the intent to arouse or gratify the sexual desire of any person. *See Shamam v. State*, 280 S.W.3d 271, 278 (Tex. App.—Amarillo 2007, no pet.). The specific intent to arouse or gratify a person's sexual desire can be inferred from the defendant's conduct, remarks, and all the surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211,

9

216 (Tex. Crim. App. [Panel Op.] 1981); *Tienda v. State*, 479 S.W.3d 863, 873 (Tex. App.—Eastland 2015, no pet.); *Moore v. State*, 397 S.W.3d 751, 754 (Tex. App.— San Antonio 2013, no pet.). Intent can be inferred from conduct alone, and no oral expression of intent or visible evidence of sexual arousal is necessary. *Tienda*, 479 S.W.3d at 873; *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). With respect to a defendant's intent to arouse or gratify his sexual desire, his intent can be inferred from the act itself. *See McKenzie*, 617 S.W.2d at 216.

With respect to Appellant's assertion that there was no forensic evidence in the case, corroboration of the victim's testimony by medical or physical evidence is not required. *Wishert v. State*, 654 S.W.3d 317, 328 (Tex. App.—Eastland 2022, pet. ref'd); *see Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). As noted by Hinson, the passage of time precluded her from conducting an acute sexual assault examination. However, Hinson observed a physical change that was consistent with L.D.A.'s allegations.

We additionally note that L.D.A.'s testimony alone allowed the jury to find Appellant guilty of the charged offenses. Under Article 38.07 of the Texas Code of Criminal Procedure, a conviction for aggravated sexual assault of a child, sexual assault of a child, and indecency with a child by sexual contact "is supportable on the uncorroborated testimony of the victim of the sexual offense" if, at the time of the offense, the victim was seventeen years of age or younger. CRIM. PROC. art. 38.07(a), (b)(1) (West 2023). In this regard, L.D.A. testified to Appellant inappropriately touching her "hundreds" of times while she was a child. L.D.A. additionally testified that Appellant had sexual intercourse with her when she was under fourteen "approximately five or ten" times, and that it happened an additional "ten to 15 . . . 20 [times] maybe" when she was fourteen or fifteen. Accordingly, L.D.A.'s testimony addressed a sufficient number of episodes to support Appellant's

two convictions for indecency with a child by sexual contact, his one conviction for sexual assault of a child to which he pleaded guilty, and his four convictions for aggravated sexual assault of a child.

As correctly observed by Appellant, his convictions turned on the jury's determination of the credibility of L.D.A. and Appellant. L.D.A. and Appellant offered contradictory versions of what transpired between them. We defer to the jury's credibility and weight determinations because the jury is the "sole judge" of witnesses' credibility and the weight to be given their testimony. *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021) (quoting *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012)); *see Jackson*, 443 U.S. at 319. As the sole judge of a witness's credibility, "the jury can believe all, some, or none of a witness's testimony." *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony."). Thus, the jury was free to reject the testimony presented by Appellant that challenged L.D.A.'s credibility. The jury's determination to accept L.D.A.'s version of the events was a decision based inherently on its evaluation of the credibility of the witnesses, a decision that is within the jury's sole province to resolve.

We additionally note that there is evidence that supports the credibility determination made by the jury. L.D.A. was very reluctant to testify at trial many years after making the initial outcry. She testified: "I worked really hard to get to the place that I'm at. I am sober. I am healthy. I am working on becoming successful. I'm rebuilding myself, and this is something that held me down for a very long time and I didn't want it to take any more of my life from me." She also testified that she was reluctant to make the initial outcry because she was scared; Appellant threatened her and told her to keep the conduct between her and Appellant

11

a secret. Conversely, Appellant repeatedly denied any inappropriate conduct during his initial recorded interview and the first part of his second recorded interview, yet he later acknowledged during his second recorded interview to having sexual intercourse with L.D.A.

Viewed in the light most favorable to the verdict, we conclude that there is sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Appellant committed the acts with which he was charged in trial court cause nos. 14233, 14235, 14242, 14377, 14378, 14379, and 14380. *See Jackson*, 443 U.S. at 319. We overrule Appellant's first issue.

As noted previously, Appellant asserts in his second issue that he was harmed as to punishment in trial court cause no. 14269 because of the erroneous convictions in the other trial court cause numbers. Appellant conditions this issue on the success of his first issue. Because we have determined that the evidence supporting his convictions in the other trial court cause numbers was sufficient and we have overruled Appellant's first issue, we also overrule his second issue.

Finally, although not raised on appeal, the written judgments contain nonreversible errors because there is a variance between the trial court's oral pronouncements of Appellant's sentences and the trial court's written judgments. In pronouncing Appellant's sentences, the trial court only announced the $10,000 fine assessed by the jury in trial court cause no. 14269. However, the written judgments in trial court cause nos. 14233, 14235, 14242, 14377, 14378, 14379, and 14380 assess a fine of $100, and the written judgment in trial court cause no. 14269 assesses a fine of $10,100.[4] With respect to the additional $100 fine assessed in each case, the written judgments indicate that it was a "Child Abuse Prevention Fine"

_____

[4]We note that the maximum fine for a second-degree felony is $10,000. PENAL § 12.33(b).

12

assessed under Article 102.0186 of the Code of Criminal Procedure. CRIM. PROC. art. 102.0186 (West Supp. 2024).

When there is a variation between the oral pronouncement of sentence and the written judgment, the oral pronouncement controls. *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002); *see Coffey v. State*, 979 S.W.2d 326, 328–29 (Tex. Crim. App. 1998); *Wiedenfeld v. State*, 450 S.W.3d 905, 907 (Tex. App.—San Antonio 2014, no pet.). Because the trial court only assessed a $10,000 fine in trial court cause no. 14269 when it orally pronounced Appellant's sentences and because we have the necessary information for reformation, we modify the trial court's judgment in trial court cause no. 14269 to only show a fine of $10,000. *See* TEX. R. APP. P. 43.2(b); *Wiedenfeld*, 450 S.W.3d at 907–08; *see also Rhodes v. State*, No. 11-24-00018-CR, 2025 WL 1129021, at *6–7 (Tex. App.—Eastland Apr. 17, 2025, no pet. h.). For the same reason, we also modify the trial court's judgments in trial court cause nos. 14233, 14235, 14242, 14377, 14378, 14379, and 14380 to show no fine.

*This Court's Ruling*

As modified, we affirm the judgments of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


April 30, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.